This case is up from the CIT on summary judgment against plaintiffs, and we have contended in our briefs that the court, the lower court, made critical errors of fact. In the preliminary results of AR 9 and AR 10, Commerce stated, I'm quoting now, Upon issuing the final results of this review, I'm paraphrasing, Commerce shall determine and Customs shall assess anti-dumping duties on all appropriate entries covered by this review. In your administrative case briefs, did you challenge this determination in either administrative review? Well, we would submit that that instruction is generic and ambiguous because the entries that are subject to the review are the entries Commerce requires us to report, and they've always required us to report by invoice date, and from 2008 on to current reviews, Kangtai has been continuously investigated, has always reported invoice date as the date of sale, and that way there would be no duplication or overlap in the sales that are reviewed, and there are principles behind that practice, if the court can indulge. The point is you're supposed to match the cost to the timing of the setting of the price. In the blue brief at 17 to 20, you identify various factual inferences that you allege the CIT made in favor of the government, but you cite the CIT's background facts found at J82. Where did the CIT rely on those facts, such as its statement that Kangtai reported in its analysis of the jurisdictional? Could I direct the court, I have the confidential appendix up here since it's just us, the joint appendix at page 8, which is the slip opinion at page 8. I just want to caution you not to divulge any confidential information. I don't believe there's any confidential information, I just have this for my reference, so it might be just so we're all on kind of the same page. If you look at the court's opinion on page 8, the court says at the bottom of the top paragraph, due to the silence in the statute, the reasonableness of the department's interpretation, court defers to commerce's reasonable consideration of either sales or entries in a given POR. Well, I don't dispute that, but even the government doesn't dispute that forever in the history of the case, the law of this case for this company, this exporter, respondent, has been invoice date for date of sale. Can I ask you, so in administrative reviews 1 through 8, we were a new shipper, we came in around review 5, and now we're in review 12. Okay, well you're relying on pre-9 history to say there was a consistent practice with respect to the potential sales versus entry date issues, either for the calculation of the annual rate or for the assessment. Well, to describe the universe of sales, we were required to report, but it's not merely a practice. We followed the letter of the commerce questionnaire. Let me just try to ask a question, see if I can communicate what I've had in my mind. Does this record show that before the years in question, there was ever a sale in year 1 followed by, in year X, followed by an entry in year X plus 1, where what I mean by year, of course, is June 1st to May 31st, right? Okay, I understand your question. Was there ever such a disparity as there came to be that's at issue here? I understand your question. Never in the history of this case has that happened, but more importantly... Well, that makes the history of the past practice really not that informative, if this didn't happen before. But the logic of the questionnaire and the way the questionnaires are answered supports the principle that you don't review sales twice in different reviews. I get the point that there is something bizarre about a mismatch between the items that you're counting in doing the calculation and the scope of the assessment, of what items are being subject to the assessment. That's, at least to me, a surprising thing. So that when Commerce says, and the CIT say, we, Commerce, can use sales or entries, that doesn't begin to suggest that for calculation you can use one and for assessment you can use the other. It's the mismatch. Those are two separate issues. I would say not only has this never happened in this case, the government hasn't presented any case ever in 30 years of experience where this has happened. So the reason I'm saying that is because it would be very difficult and onerous for an exporter who does not have knowledge of the entry dates to anticipate this issue. There would be no way for them to brief the issue at the case brief, and therefore, when the government says we failed to exhaust remedies, that's not a reasonable remedy to require us to brief 6, 8, 12 months prior to the actual assessment. When you referred to the questionnaire in the beginning of your answer to Judge Toronto, are you talking about the Section C questionnaire? Yes. I still haven't finished answering your original question, which was at the bottom of page 8. Wait. Stop. I want to ask you a question. That questionnaire directed King Tai to, and I'm quoting, report each U.S. sale of merchandise entered for consumption during the period, the PLR, except, one, for EP sales, if you do not know the entry dates, report each transaction involving merchandise shipped during the PLR, and two, for CEP sales made after importation, report each transaction that has a date of sale within the period of review of PLR. Given that the exception for EP sales only applies if you do not know the entry dates, why is your interpretation of this questionnaire reasonable? That's a great question, Your Honor. King Tai did not know the entry dates. And there's no evidence that they knew the entry dates and no allegation that they ever knew the entry dates. And that's the problem with page 8 of the lower court's opinion. Isn't your problem really here that you failed to file a preliminary injunction when you filed your first lawsuit and consequently those entries are liquidated? No. First of all, we contested that, but whether we got injunctions or not, customs would have still liquidated at 285 percent because those sales were not double reported into the 10th review. They weren't double reported into the 10th review because the Commerce Department's non-market standard questionnaire for 30 years has never required that in the past entry date. But it's generally never been their questionnaire in 30 years. The exporters who are not importers of record do not know the entry dates, and therefore they report the date of shipment, which we explain in our briefs, has been interpreted by Commerce to be the invoice date when that invoice sets the material terms of sale. Can I step back to what I think is the threshold and maybe even the question in front of us, was the CIT right in finding that these challenges that you're now making, which I guess were counts 1 through 3, had to be filed under 1581C within 30 days, and therefore you're out of time, full stop. If there's an ambiguity, as I tend to think there is, in the two different, slightly different formulations in AR 9 and AR 10 about appropriate entries, one uses the word covered and the other doesn't use the word covered, but it always says appropriate entries, and that does not make clear that the entries have to be during the June 1st to May 31st period that is covered. It leaves that open. If that's an apparent ambiguity, why was 1581C challenged? Well, first of all, we think on summary judgment when the court gets fundamental facts wrong, it should be remanded, but the court was not correct because we could not have anticipated that would be an issue until the importer got a bill 12 months later. So let me finish. Why do you think that this was not a surprise to you once you got the instructions? Yes. It surprised us only when we got the bill from the importer saying why am I liquidated at 285%. Oh, and the instructions were secret. That's right. And they only issue like six months after the brief is due. So we were briefing issues of merit, such as the surrogate values for the case. Those were the real issues in the case, the cost of production. And so we briefed all issues presented in the Commerce's Preliminary Issues and Decision Memo. We can't know exactly how they will enforce an order until much later. And I would point the court to consolidated bearings where an importer, like in our case NSC, didn't even participate in the case and still the court took jurisdiction under 1581I and said this is about the administration and enforcement. It's about the liquidation message. When you filed your 1581I case, did you file for a protective preliminary injunction at that time? No, because the entries were already liquidated, all of the entries, 18 entries. So what's very important about the holding, the final merits holding and consolidated bearings, they said at the end of the day this is a reseller situation where the bearings were floating all over the place and never made it into the liquidated. Then jurisdiction could not come under 1581I. Under C. I has a two year statute of limitations. So they can come under I. You're into your six minutes time. Do you want to say anything? Okay, we have a question. I have a couple of questions. One is, you fell back in your answer to Judge Toronto on saying well, the C.I.T. got the facts wrong. But that takes me back to my initial question to you about if the court misstated the facts but didn't rely on them in its jurisdictional holding, what difference does it make? Isn't that harmless error? We would suggest not, because the court said at the bottom of 8, the department requested both sales and entries during AR 10. That's flat wrong. And the court inferred that we had the entry dates and didn't report them. That's also flat wrong. The court got that information from tab 3 of our appendix, which was meant to be helpful to the court after the administrative proceeding and apart from the record of the administrative proceeding that we added the entry dates in with a green notation, notation for appeal. And the judge looked at that and said hey, you had the entry dates. Why didn't you report them? We never knew the entry dates until the bills came a year later. One other question. This is just a pet peeve of mine. In the blue brief at 20, you say the C.I.T. Our initial brief? Blue brief. Okay. The C.I.T. quote, curiously admitted that Kang Thai is challenging the liquidation instructions, leaving aside whether the court was curious or not. Do trial courts admit facts? They're not litigants. It was an improper choice of wording. I think it was an improper choice of wording. Will I get some of my rebuttal time back? You'll get back a little bit. Okay. Thank you, Your Honor. You do have at least two minutes, and I'll give you back two more. Total of four. May it please the Court. The results of Commerce's tenth anti-dumping duty administrative review for the chlorinated isocyanurates from the People's Republic of China. Louder, please. For chlorinated isocyanurates from the People's Republic of China, states that it will be applied to entries covered by the review. Accordingly, the liquidation of Kang Thai's entries covered by the tenth review in accordance with those results of the review was consistent with the final results. The C.I.T. said, quote, Kang Thai's response attached an exhibit identifying sales and the corresponding entry dates for those sales. Kang Thai's section C questionnaire, however, identified several dates, none of which appeared to be the date of entry. Why wasn't this statement by the C.I.T. an error? And does it matter? Your Honor, I think it's... I'm not sure if that's the statement where the Court is talking about their brief, an attachment to their brief, or... But the second part of that statement, when they talk about what they... It's a JA2. And then I referenced you to the record on the section C questionnaire. So you see where the C.I.T. says, Kang Thai's response attached an exhibit identifying sales and the corresponding entry dates for those sales. I think that's flat out wrong. I mean, whether the Court believes that Kang Thai reported some entries in AR10 versus no entries doesn't change the decision that Kang Thai can address commerce's... So my question was, isn't that an error and does it matter? Because I don't think it matters. That's the questions I ask your opposing counsel. No, Your Honor. I don't think the Court's decision relies on that statement. It doesn't change the fact whether Kang Thai can address the use of sales and entries in a section C case or the challenge, the element of the final review that indicates that it will be applied to entries. Kang Thai at the blue brief in AR19 says, commerce never considered Kang Thai's narrative and U.S. sales database deficient where Kang Thai did not report date of entry. Kang Thai then continues, commerce simply does not collect entry dates in case of EP exporters, and then it says, with a few instances cited by the C.I.T. being extremely rare examples. Is that true? Well, I think what we've seen in this case is the questionnaire that they received and some questionnaires that are discussed in that other line of cases that the C.I.T. relies on, Korrestal, Wananabe, and Hemmerlich, and in some of those cases the questionnaire appears to be essentially the same, and it asks for entries unless they're unavailable, and otherwise it indicates it will accept sales or shipments, which other information tells us sales are inadequate can be provided for shipments. They say this is in that unless category. I'm sorry? They say that this case is in the unless category. So is there prior case law showing a practice where when commerce accepts the sale date within the period of the relevant year, June 1st to May 31st, and uses that in its case, the sales of the closing May 31st are now subject to a later annual review obligation. Has commerce ever done that before? Well, Your Honor, it doesn't appear to have been litigated, and it wouldn't be litigated if that worked the benefit of the party whose sales entered later, and then they were content with the rate. You began your argument by seemingly quoting something from AR 10. Can you repeat that? I wasn't quoting. I think I was characterizing. Right, which is I think what your brief did, which it seemed to me to be really not. There was real work being done in that characterization. This quote is on all appropriate entries of subject merchandise in accordance with the final results of this review. That's AR 10. The language in AR 9 is a little bit different. It uses the word covered, which sure suggests that there is a perfect coincidence of the items used in the calculation in the annual review and what is going to be covered by the actual customs assessment. And this case involves the seemingly unprecedented, because you're not giving me any precedent for it, of a and then nevertheless subject to assessment under the year X plus 1 order because it wasn't repeated. And the court's question is? How would they guess from reading the language of AR 10 that there was something to challenge under 1581C within 30 days from that language? And then it turns out first in the instruction, which is confidential, so they didn't see it. And then eventually they get news from what the importer that turns out that they should have reported this again in year 10, having already reported it in year 9. And because they didn't report it in year 10, they're stuck with a 285% tariff because they didn't report it. When otherwise they would have, I forget, is the actual rate for them, is that confidential or not? 35%. It would have been 35%. An average rate is not a specific, the specific rates for the importers is confidential. How should they have known they should have appeal? Which is what the CIT said. Well, if you're going to report sales rather than entries, and the rate is always going to be applied to entries, which it is, and I understand the court's concerned. Appropriate entries. They don't know, right? That language doesn't say all entries during, can we just call it year 9 so I don't have to keep referring to June 1st and May 31st? Sure. Okay. AR9. The AR9 period. This language does not say what appropriate entries are. It could easily mean, and I would have guessed without knowing anything more, and maybe I'm not enough of an insider, that that means all the entries on the items that were reported for purposes of doing the calculation in year 9. Well, Your Honor, I mean, we don't, we think it's clear, because each of the Federal Register notices talks about the period of review, and then that period of review is what's covered under the Federal Register notice, that when they're talking about entries, they're talking about entries within that period of review. Except you do the calculations on sales within that period of items that have not been entered during that period. We do calculations on sales when that's the information that they provide us because they say they don't have entries. And yet you've used that sale in the calculation, and when it's entered the next year, you are now demanding that they include that What we're saying is that the concern... Maybe there's nothing strange about that. The concern with the treatment of, I mean, the reviews apply to entries because that's what Customs gets. Customs gets the entries. Under Commerce instructions, you could easily have given Commerce the instruction, I mean Customs, the instruction that when you get the entries for the following items whose sales have been part of AR-9, use the AR-9 rate. In any event, what we're saying is, first, we think the Federal Register notice is clear that it's going to apply to entries, and that put them on notice as early as the preliminary results. If it was ambiguous, it put them on notice that there was an ambiguity. Isn't there something in the law, maybe not in this area, but in other areas, some distinction between facial, and there's some other word, it's a word like latent ambiguity, that's it. Why is this not a latent ambiguity? Latent ambiguities tend not to start clocks. Well, I'm not sure that that would apply here, but if it were to, Your Honor. Keep the language of the questionnaire in mind when you answer. That was a friendly question. I'm sorry, that distracted me. I think the suggestion is that the language of the questionnaire, which they of course had, tells them how to interpret this appropriate entry language in the final result, which would make it either not ambiguous or make the ambiguity latent by virtue of some apparent contrast. I think that's a very good point, Your Honor. That's our prior case point. If there's something else the Court would like me to address, or I can just go through some of the points that they've raised in their reply brief. One thing I'd like to indicate is that as the Court considers this, it's important to note what they were asking, not to get the rate under AR-10, the rate that they're challenging the liquidation instructions for, but they're asking to get the rate in AR-9. They're asking also for a declaratory statement that Commerce is not allowed to essentially apply the final results to entries in that period, if it's been calculated based on sales. I know that Counsel for Kangtide talked earlier about consolidated bearings and why they fall within consolidated bearings, and I think that takes them out of that They made the argument that they could not maintain the action under Section C because they could not maintain the action under Section I because they could have brought the same action under Section C if they had participated in the review, but they chose not to. And the Court in that case, although it granted jurisdiction under I, indicated that Commerce's argument might have prevailed if they were challenging the final results. Now here, what they're doing is they're trying to get the final results of AR-9 applied to them. They're not trying to get into the scope of the final results the way that the plaintiff in consolidated bearing was trying to do. Okay, I think we have your argument. Your Honors, thank you for the additional time. I do want to return to the Counsel for the Government's point about the other cases. I think the other cases establish that when Commerce requests entry date, it's an extraordinary event. They do it in a supplemental questionnaire. That clearly indicates that it's not required in the standard questionnaire. Commerce says in the standard questionnaire, if you don't know the entry date, you're not required to provide it. You provide your date of sale based on when the material sales terms are set in definitive, because that's when the price is discriminated. And when you know when the price is discriminated, you can match it to period costs. And that's why we've always been required to record the invoice date. Don't the administrator reviews establish the dumping rate for goods that were entered during the period of review? Yes, and they set a deposit rate going forward. Right, and then next year they have another review, and that establishes a dumping rate for products entered into in that period of time. Under that period of review, or period of investigation. Yeah, I mean, there's two issues. There's one issue is what is the department examining in the period. And another issue is how do they administer, of course. When Customs looks at an entry, then they're applying the active dumping rate for that entry, correct? Generally, but they didn't do that here. I mean, this is why I was talking about consolidated periods. Well, they did. I mean, you're just saying that I reported sales, and my sales were investigated under this period of review, AR-9. But when I entered them, I entered them during the year that coincides with AR-10. And therefore, I should have gotten the AR-9 rate and not the AR-10 rate. And it just so happens that the AR-10 rate is 250, you know, 238, is it? 285. 285 ad valorem dumping rate. And the year 9 is how much? Zero. Zero. So you're arguing that I shouldn't have been my entries that I entered into the year or a time that coincides with the AR-10. Well, first of all, Kongtai didn't make the entries. They're not Kongtai's entries. Kongtai has always said that it didn't know the entry date. It doesn't matter whose entries they are. I mean, it's the date that they were entered. Customs looks at this and gets the Customs transaction documentation. And if it gets it in year 12, I mean, five years down, they're going to have to do an investigation. That's the latent ambiguity that we would argue we were not required to brief at the preliminary result. This has never happened in 30 years. I think that's the way the system works. And unlike consolidated bearings, the sales were actually reviewed and calculated. In consolidated bearings, they said, you know what, ultimately, these sales were never reviewed. So we're stuck with the all others rate. But here, the all others rate is a penal rate against the government of China. That's another argument. I know. But these sales were reviewed and calculated. There's no doubt about that. The question here is that, should you receive the applicable dumping rate for AR-9 as opposed to AR-10, when it seems to me the record indicates that your goods entered during the period of time of AR-10? We would argue that due to latent ambiguities in the generic instructions in the Federal Register, the particular enforcement and administration of the AR-10 results was unreasonable. Do you use latent ambiguity in your brief? Are you arguing latent ambiguity in your brief? We did argue that that issue was not clearly presented in the preliminary issues and decisions. Well, I'm picking up on the discussion. We're feeding you your argument. Okay, I think we've heard enough. Thank you for your argument. We thank all the parties for the argument. This court now remains in recess.